**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SAMIRA BLAIS,<br><br>Plaintiff,<br><br>v.<br><br>ALLEN MALHOTRA,<br><br>Defendant. | Civil Action No. 25-00837 (GC) (JTQ)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff Samira Blais's Motion for Summary Judgment under Federal Rule of Civil Procedure (Rule) 56, (ECF No. 80), and Defendant Allen Malhotra's cross-Motion for Summary Judgment, (ECF No. 81). The parties opposed each other's Motions. (ECF Nos. 82, 83.) Plaintiff filed a reply. (ECF No. 86.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiff's Motion is **GRANTED**, and Defendant's Motion is **DENIED**.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiff is a citizen of Canada, and Defendant is a citizen of the United States. (ECF No. 80-2 ¶¶ 1-2; ECF No. 82-1 ¶¶ 1-2.) On April 20, 2019, Plaintiff and Defendant married. (ECF

---

[1] On a motion for summary judgment, the Court "draws all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark N.J. Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (citation modified). The factual circumstances surrounding this action, as revealed through discovery, are set forth in the parties' submissions in accordance with Local Civil Rule 56.1. Plaintiff's Statement of Undisputed

No. 80-2 ¶ 3; ECF No. 82-1 ¶ 3.) On or about May 29, 2019, Defendant executed an Affidavit of Support (Form I-864) on behalf of Plaintiff as a sponsored immigrant. (ECF No. 80-2 ¶ 4; ECF No. 82-1 ¶ 4; *see generally* ECF No. 80-4.)[2] Plaintiff subsequently obtained lawful permanent residence in the United States. (ECF No. 80-2 ¶ 5; ECF No. 82-1 ¶ 5; *see also* ECF No. 80-4 at 16-17.)

The Form I-864 includes a "Sponsor's Contract." (ECF No. 80-4 at 8-10.) The contract states that, "until [the sponsor's] obligations under Form I-864 terminate," the sponsor must:

> Provide the intending immigrant any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines for his or her household size[.]

(*Id.* at 8.) If a sponsor does not fulfill their obligations, a sponsored immigrant "may sue [the sponsor] for this support." (*Id.*) *See also* 8 U.S.C. § 1183a(e) ("An action to enforce an affidavit of support . . . may be brought against the sponsor in any appropriate court . . . by a sponsored alien, with respect to financial support[.]"). The form also identifies the limited ways in which a sponsor's obligations will terminate:

> [O]bligations under a Form I-864 . . . will end if the person who becomes a lawful permanent resident based on that affidavit:
>
> > A. Becomes a U.S. citizen;
> >
> > B. Has worked, or can receive credit for, 40 quarters of coverage under the Social Security Act;
> >
> > C. No longer has lawful permanent resident status and has departed the United States;

---

Material Facts is at ECF No. 80-2, which Defendant responded to at ECF No. 82-1. Defendant's Statement of Undisputed Material Facts is at ECF No. 81-2, which Plaintiff responded to at ECF No. 87. Unless otherwise noted, the relevant facts are undisputed or supported by record evidence.

[2] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

> D. Is subject to removal, but applies for and obtains, in removal proceedings, a new grant of adjustment of status, based on a new affidavit of support, if one is required; or
>
> E. Dies.

(*Id.* at 9.) It further states that "Divorce **does not** terminate . . . obligations under Form I-864." (*Id.* (emphasis in original).)

Plaintiff and Defendant divorced on July 15, 2022. (ECF No. 80-2 ¶ 6; ECF No. 82-1 ¶ 6.) As part of the divorce, the parties executed a Marital Settlement Agreement (MSA) on June 13, 2022. (ECF No. 81-2 ¶ 3; ECF No. 87 ¶ 3; ECF No. 10-1.) The MSA states in relevant part,

> 4. <u>Lump Sum Alimony and Equitable Distribution Buy-Out.</u> In consideration of all other terms of this Agreement, Husband shall pay Wife $50,000 in full and final settlement of all alimony and/or equitable distribution claims[.]

(ECF No. 80-6 at 8; *see also* ECF No. 81-2 ¶ 4; ECF No. 87 ¶ 4.) The $50,000.00 payment was payable according to a predefined schedule, including $15,000.00 payable by June 17, 2022, and $35,000.00 payable within 24 hours of Plaintiff vacating the marital home, which was anticipated to occur by July 15, 2022. (ECF No. 80-6 at 8.) Defendant paid Plaintiff the $50,000.00 accordingly. (ECF No. 81-2 ¶ 5; ECF No. 87 ¶ 5.)

Over two years later, on or about November 26, 2024, Plaintiff made a written demand to Defendant for him to provide her support under Form I-864. (ECF No. 80-2 ¶ 13; ECF No. 82-1 ¶ 13.) Plaintiff asserts that after Defendant failed to comply, Plaintiff obtained a personal loan from Discover Financial Services to support herself. (ECF No. 80-2 ¶ 14; ECF No. 82-1 ¶ 13.)

### B. Procedural Background

On January 30, 2025, Plaintiff, represented by counsel, filed a Complaint to enforce Defendant's obligation to provide her with financial support under the Form I-864.[3] (*See generally* ECF No. 1; *see also* 8 U.S.C. § 1183a.) On March 10, 2025, Defendant answered the Complaint. (ECF No. 10.) On May 2, 2025, Plaintiff filed a motion for partial summary judgment, (ECF No. 16), which the Court found premature, (ECF No. 24 (citing *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d. Cir. 2007) ("If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion.")).) On September 30, 2025, the Court granted Plaintiff's Motion to Proceed Pro Se. (ECF No. 30.)

Upon the completion of discovery, Plaintiff and Defendant filed the instant Motions for Summary Judgment on March 20, 2026, and March 27, 2026, respectively. (ECF Nos. 80, 81.) Plaintiff seeks a declaratory judgment that Defendant remains liable to Plaintiff under the Form I-864 and must maintain her at 125% of the Federal Poverty Line until a terminating event; specific performance of Defendant's obligations under the Form I-864 until a terminating event; damages for unpaid Form I-864 support arrears; interest; and attorney's fees and costs. (ECF No. 80-1 at 26.) Defendant's cross-motion "requests that the Court hold that Plaintiff may recover, if at all, only upon proof of an actual deficiency measured against 125% of the Federal Poverty Guidelines, determined on a year-by-year basis and supported by competent evidence" and seeks a judgment confirming that the $50,000.00 MSA payment Defendant made to Plaintiff should be credited toward any award Plaintiff receives through this action. (ECF No. 81-1 at 12-13.) The parties

---

[3] This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. *See* 8 U.S.C. § 1183a(e) ("An action to enforce an affidavit of support . . . may be brought against the sponsor in any appropriate court . . . by a sponsored alien, with respect to financial support[.]").

opposed each other's Motions. (ECF Nos. 82, 83.) Plaintiff also filed a reply. (ECF No. 86.) These Motions are now ripe for review.

## II. <u>LEGAL STANDARD</u>

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). The Court must grant summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In the face of a properly supported summary judgment motion, the nonmovant's burden is rigorous: the party 'must point to concrete evidence in the record'—mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment." *Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 616 (D.N.J. 2023) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995)).

## III. <u>DISCUSSION</u>

Plaintiff moves for summary judgment and seeks enforcement of Defendant's obligations under the Form I-864. (ECF No. 80; ECF No. 80-1 at 5.) According to Plaintiff, Defendant has

conceded his ongoing obligation under the Form I-864 and no terminating event has occurred. (ECF No. 80-1 at 14-15.) Plaintiff further argues that damages are appropriate at this stage because the record is sufficiently developed to award damages. (*Id.* at 16-17.) Plaintiff asserts that the $50,000 payment pursuant to the MSA should not be considered "income" for the purposes of a damages analysis because it represented her fair share of property, not income. (*Id.* at 19-20.)

In response, Defendant concedes that "divorce does not itself terminate an I-864 Affidavit of Support obligation," (ECF No. 82 at 6; *see also* ECF No. 81-1 at 6-7 (collecting cases)), and he instead focuses on Plaintiff's purported "fail[ure] to present the competent, year-by-year damages showing that I-864 case law requires," (ECF No. 82 at 7-9). Indeed, Defendant argues that to recover damages, Plaintiff must "present admissible evidence" to establish the "precise relevant period for each year," the "applicable 125% Federal Poverty Guideline for that year," "Plaintiff's actual income and qualifying resources for that year," and "[a]ll payments received from Defendant, including the [MSA] payment."[4] (*Id.* at 8-9.) Defendant further argues that the MSA payment must be credited toward damages and that the "timing, allocation, and financial effect" of the MSA payment raises genuine disputes of material fact that preclude summary judgment as to damages. (*Id.* at 10.) Finally, Defendant argues that equitable principles bar Plaintiff's claims given the years between the parties' divorce and Plaintiff's initiation of this action and the risk of "double recovery." (*Id.* at 13-14.)

---

[4] Defendant also argues that the Court should strike Plaintiff's Motion because it was signed with an electronic signature, which Plaintiff asserts is only permissible for attorneys under the Local Civil Rules. (ECF No. 82 at 5-6.) Given Plaintiff's *pro se* status, the fact that Plaintiff filed many documents prior to her Motion using electronic signatures which Defendant did not seek to strike, and because the Court can permit signatures "in any other manner approved by the Court," L. Civ. R. 5.2, the Court declines to strike Plaintiff's Motion.

Defendant's Motion for Summary Judgment seeks an order from the Court "establishing the governing legal framework for Plaintiff's Form I-864 claim." (ECF No. 81-1 at 8, 13.) Specifically, Defendant asks the Court to enter a judgment "establishing that any award under the I-864 must be reduced by the support Plaintiff already received to prevent an impermissible double recovery" and "hold[ing] that Plaintiff may recover, if at all, only upon proof of an actual deficiency measured against 125% of the Federal Poverty Guidelines, determined on a year-by-year basis and supported by competent evidence." (*Id.* at 12-13.) Plaintiff responds that a divorce settlement does not nullify Defendant's Form I-864 obligation and that any lump sum Plaintiff received could not be distributed across multiple years for the purpose of fulfilling Defendant's Form I-864 obligation. (ECF No. 83 at 1-3; ECF No. 86 at 1-3.)

In general, while a person immigrating to the United States is inadmissible if they are "likely at any time to become a public charge," 8 U.S.C. § 1182(a)(4)(A), the Government "may also consider any affidavit of support" in rendering its decision regarding the person's admissibility, *id.* § 1182(a)(4)(B)(ii); *see also* 8 U.S.C. § 1183a (discussing requirements for a sponsor's affidavit of support). By signing a Form I-864, "the sponsor is obligated to provide the sponsored immigrant with whatever support is necessary to maintain the sponsored immigrant at an annual income that is at least 125% of the federal poverty level annual guideline." *Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1024 (N.D. Cal. 2008). The affidavit acts as a contract between the sponsor of the immigrant and the United States Government in which the sponsor agrees to provide the sponsored immigrant with the necessary financial support. *Shah v. Shah*, Civ. No. 12-4648, 2013 WL 12157867, at *3 (D.N.J. Oct. 28, 2013) (citing 8 U.S.C. § 1183a(a)(1)). Defendant's signed Form I-864 recites this obligation and none of the five termination events listed on the Form are at issue in this case. (ECF No. 80-4 at 8, 10.) Divorce is also not a basis for terminating the

sponsor's obligation under a Form I-864. *See Shah*, 2013 WL 12157867, at *3 ("[D]ivorce does not terminate a sponsor's obligation to provide for the alien."). (*See also* ECF No. 80-4 at 9.)

Absent a terminating event, the sponsor is accountable "to the sponsored alien, the Federal Government, any state or political subdivision, or any other 'entity that provides any means-tested public benefit.'" *Shah*, 2013 WL 12157867, at *3 (citing 8 U.S.C. § 1183a(a)(1)). When a sponsor has not maintained the sponsored immigrant at the requisite threshold, to analyze damages, courts "compare [the p]laintiff's income against the 125% poverty threshold *for each individual year in question*."[5] *Shumye*, 555 F. Supp. 2d at 1024 (emphasis added); *see also Shah*, 2013 WL 12157867, at *5 (citations omitted) ("[The sponsored immigrant's income] may be deducted from the amount that the sponsor must pay [and so] a defendant is ordinarily liable for the difference between the 125 percent poverty threshold *for each year* and the plaintiff's personal income and benefits received for that year."[6] (emphasis added)). "Income" is not defined in applicable law, but courts have interpreted income to mean "total income for purposes of . . . U.S. Federal income tax liability." *Asilonu v. Okeiyi*, 673 F. Supp. 3d 776, 786 (M.D.N.C. 2023) (extrapolating definition of income in regulations pertaining to the enforcement of a Form I-864 obligation for divorced sponsor and sponsored immigrant); *see also Fukita v. Gist*, Civ. No. 20-1869, 2021 WL 288121, at *5 (D. Minn. Jan. 28, 2021) ("As used in the pertinent regulations, 'income' means the

---

[5] Courts consider whether the threshold has been met for a one-person household, even if the sponsored immigrant lives with other people. *Erler v. Erler*, 824 F.3d 1173, 1180 (9th Cir. 2016).

[6] Indeed, in calculating damages, courts have explicitly rejected the approach of aggregating the sponsored immigrant's income for the period of purported arrears. *Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1024-25 (N.D. Cal. 2008) ("The Court is not persuaded that the aggregate method advanced by Defendant, which was used by the Court in *Cheshire*, provides the proper measure for liability and damages, and will not follow that approach." (discussing *Cheshire v. Cheshire*, Civ. No. 05-453, 2006 WL 1208010, at *5 (M.D. Fla. May 4, 2006))).

sponsored immigrant's federally taxable income."). Thus, income may include "the immigrant's wages, government benefits, educational grants, and alimony, if any." *Golipour v. Moghaddam*, 438 F. Supp. 3d 1290, 1301 (D. Utah 2020) (citation modified). While courts have found that a sponsored immigrant "has the burden of demonstrating the exact amount of support owed," courts have also found that a sponsor must establish any defense that they provided financial support to the plaintiff during the years at issue. *Toure-Davis v. Davis*, Civ. No. 13-916, 2014 WL 1292228, at *10-11 (D. Md. Mar. 28, 2014).

First, the record establishes that Defendant does not contest his obligation to support Plaintiff under the Form I-864. (*See* ECF No. 64 at 5 (Tr.) at 5:11-12 ("[W]e do not contest liability in this case."), 19:20 ("[W]e never objected to liability.").) Insofar as Defendant asserts that his obligation should terminate or be reduced because of the MSA payment, the Court finds this argument unavailing, as a marital agreement cannot supersede a sponsor's obligations under the Form I-864. *See Erler v. Erler*, 824 F.3d 1173, 1177 (9th Cir. 2016) ("[U]nder federal law, neither a divorce judgment nor a premarital agreement may terminate an obligation of support."). For example, in *Golipour v. Moghaddam*, the court found that nuptial agreements do not terminate a Form I-864's financial support obligation. *See* 438 F. Supp. 3d at 1297-99. The court analyzed the purpose and terms of the Form I-864 to reach its conclusion. *Id.* at 1298-99. It found that the "clear and plain language" of the Form I-864 does not enumerate a waiver of payment "by divorce or nuptial agreement." *Id.* at 1299. The court was also persuaded by the form's clear statement that divorce "*does not* terminate" a sponsor's obligations, inferring that agreements made pursuant to a divorce similarly could not terminate such obligations. *Id.* (emphasis in original). It further noted that permitting a sponsor to "unilaterally terminate the Form I-864's financial support obligation through a separate agreement with the immigrant would ignore the interests of the U.S.

Government," a party to the Form I-864 contract. *Id.* Because Plaintiff has established Defendant's ongoing obligation under the Form I-864, and because Defendant raises no material dispute of fact in this regard, the Court grants summary judgment to Plaintiff regarding Defendant's ongoing obligation to maintain Plaintiff at 125% of the annual poverty level until a terminating event occurs. *See also Cyrousi v. Kashyap*, 386 F. Supp. 3d 1278, 1283 (C.D. Cal. 2019) (denying the defendant sponsor summary judgment because a marital settlement agreement stating it was "a final and complete settlement . . . including . . . the right of either Wife or Husband to spousal support" did not terminate the defendant's Form I-864 obligations).

Next, the Court considers whether it is appropriate to grant summary judgment regarding the amount of damages due, if any, to Plaintiff. Plaintiff has provided tax return transcripts for the years 2022 through 2024 as well as her tax return for 2025. (ECF No. 80-4 at 19-35.) Defendant does not dispute these documents or contest that these are proper modes of calculating income. (*See generally* ECF No. 82.) Indeed, courts consider tax returns when calculating damages pursuant to Form I-864 obligations. *See Asilonu*, 673 F. Supp. 3d at 786. Plaintiff also submits to the Court calculations of the difference between the 125% poverty threshold and her annual income based on these tax documents. (*See* ECF No. 80-2 at 2-3; ECF No. 8-6 at 16.) Defendant also does not dispute these calculations. (*Compare* ECF No. 80-2, *with* ECF No. 82-1.)

Based on the undisputed record before the Court, there is sufficient evidence to calculate Plaintiff's damages for 2022 through 2025. Pursuant to the Federal Register, for a household size of one person, 125% of the poverty guidelines for the years at issue are as follows, and based on

Plaintiff's submissions to the Court, Plaintiff reported the following income[7] for 2022 through 2025:

| Year | 125% of the Poverty Guidelines | Income | Difference |
|---|---|---|---|
| 2022[8] | $16,987.50 | $13,301.00 | $3,686.50 |
| 2023[9] | $18,225.00 | $8,069.00 | $10,156.00 |
| 2024[10] | $18,825.00 | $10,669.00 | $8,156.00 |
| 2025[11] | $19,562.50 | $11,172.00 | $8,390.50 |

Accordingly, the difference between the 125% poverty threshold and Plaintiff's income is the following: $3,686.50 (2022); $10,156.00 (2023); $8,156.00 (2024); and $8,390.50 (2025), totaling

7 Plaintiff's income includes "Gross receipts or sales" and "Total wages" and does not include deductions for expenses. (*See* ECF No. 80-4 at 19-33.)

8 Annual Update of the HHS Poverty Guidelines, 87 Fed. Reg. 3315, 3315-16 (Jan. 21, 2022).

9 Annual Update of the HHS Poverty Guidelines, 88 Fed. Reg. 3424, 3424-25 (Jan. 19, 2023).

10 Annual Update of the HHS Poverty Guidelines, 89 Fed. Reg. 2961, 2961-63 (Jan. 17, 2024).

11 Annual Update of the HHS Poverty Guidelines, 90 Fed. Reg. 5917, 5917-18 (Jan. 17, 2025).

$30,389.00 in damages.[12] Plaintiff has not provided sufficient information for this Court to calculate damages for 2026. Therefore, the Court declines to grant damages for 2026.[13]

While Defendant argues that equitable factors should reduce Defendant's liability to Plaintiff because Plaintiff initiated this lawsuit years after Defendant's obligation to Plaintiff began, Defendant provides no authority or caselaw that supports such an equitable remedy. (ECF No. 82 at 13.) And such a ruling would undermine the intent of a Form I-864 obligation, which is to ensure that a sponsored immigrant does not "become a public charge" when a sponsor is willing to assume that obligation in the Government's determination of entry to the United States. *See Erler*, 824 F.3d at 1175 (noting that a person who would otherwise be inadmissible because they are "likely at any time to become a public charge . . . may become admissible if a sponsor executes

---

12 The MSA included a waiver of alimony claims, (ECF No. 80-6 at 4-5), and thus the Court finds that the $50,000.00 payment is for a release of claims in exchange of a settlement and does not constitute scheduled alimony payments in the traditional sense. *See, e.g.*, *Shumye*, 555 F. Supp. 2d at 1028 (deducting the periodic and regular alimony payments that the plaintiff received from the defendant from the defendant's Form I-864 obligation); *Younis v. Farooqi*, Civ. No. 07-1393, 597 F. Supp. 2d 552, 555 (D. Md. 2009) (same). Defendant provides no caselaw to support his argument or interpretation. (*See* ECF No. 81-1 at 9-10.)

To the extent Defendant argues that a lump sum payment should be deducted from his total obligation to Plaintiff to date, this argument is inapposite to caselaw and precedent. For example, in *Toure-Davis v. Davis*, Civ. No. 13-916, 2015 WL 993575, at *11 (D. Md. Mar. 4, 2015), even though the sponsored immigrant's income far exceeded 125% of the poverty threshold from 2003 to 2010, the court did not apply these surplusages to its calculation of damages for 2012 or 2013. *See also Al-Mansour v. Shraim*, Civ. No. 10-1729, 2011 WL 345876, at *5 (D. Md. Feb. 2, 2011) ("Because the court must compare the plaintiff's income *for each year* against the 125% poverty threshold, . . . Mr. Shraim's gift of property to Ms. Al-Mansour in 2007 cannot be considered as part of her income in 2010." (emphasis in original)); *Skorychenko v. Tompkins*, Civ. No. 08-626, 2009 WL 3837340, at *2 (W.D. Wis. Nov. 16, 2009) (holding that an equitable distribution payment does not offset Form I-864 obligations because it is "a settlement of the parties' property rights" and thus it is what "plaintiff already owned, not income that she earned").

13 Plaintiff has received regular payments from Defendant pursuant to this Court's Order of preliminary injunctive relief. (ECF No. 65.) The Court's following Order terminates that Court-ordered payment in anticipation of the parties' adherence to the Order.

the affidavit of support"); *see also Brown v. Brown*, 700 F. Supp. 3d 402, 404-06 (E.D. Va. 2023) ("[The d]efendant's affirmative defenses cannot excuse the obligation [the d]efendant incurred by sponsoring the Form I-864."); *cf. Belevich v. Thomas*, 17 F.4th 1048, 1053 (11th Cir. 2021) (holding that the non-statutory defenses of unclean hands, anticipatory breach, and equitable estoppel are "inconsistent" with the purpose of the obligation of support, as they "concern the immigrant's wrongful acts, not whether he or she might become a public charge"). Accordingly, the Court declines to modify the damages owing to Plaintiff. As such, Plaintiff is entitled to damages in the amount of $30,389.00 for 2022 to 2025.

Plaintiff also asks the Court to award pre- and post-judgment interest. (ECF No. 80-1 at 23-24.) Defendant does not address this issue in his opposition. (*See* ECF No. 82.) "[T]he availability of interest in an action arising under a federal statute is governed by federal law, not the law of the forum state." *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1274 (3d Cir. 1987). Where there is no explicit congressional directive authorizing interest by statute, "the awarding of prejudgment interest . . . is committed to the trial court's discretion." *Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 981-82 (3d Cir. 1984). Pre-judgment interest is awarded upon "considerations of fairness" and can be denied "when its exaction would be inequitable." *Thabault v. Chait*, 541 F.3d 512, 533 (3d Cir. 2008) (quoting *Ambromovage*, 726 F.2d at 982). Indeed, it is "not awarded as a penalty; it is merely an element of just compensation." *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 197 (1995).

In this circuit, courts consider four factors to determine the propriety of a pre-judgment interest award: "(1) whether the claimant has been less than diligent in prosecuting the action; (2) whether the defendant has been unjustly enriched; (3) whether an award would be compensatory; and (4) whether countervailing equitable considerations militate against a surcharge." *Edwards v.*

*Wyatt*, 330 Fed. App'x 342, 353 n.7 (3d Cir. 2009) (citing *Feather v. United Mine Workers of Am.*, 711 F.2d 530, 540 (3d Cir. 1983)). First, the Court finds that Plaintiff has diligently pursued this action since sending Defendant a demand letter on November 26, 2024, (ECF No. 80-4 at 37), which weighs in favor of an award of pre-judgment interest. Second, as a result of Defendant's failure to adhere to his obligations under the Form I-864, to which Defendant concedes, Defendant has been unjustly enriched. Third, an award of pre-judgment interest would compensate Plaintiff for the years 2022 to 2025, when she lived below 125% of the poverty line. *Belevich v. Thomas*, Civ. No. 17-1193, 2019 WL 2550023, at *9 (N.D. Ala. June 20, 2019) (awarding pre-judgment interest because "the purpose behind damages for breach of an Affidavit of Support is to 'put plaintiff in as good a position as [she] would have been had the contract [of the Form I-864] been performed'" (citation omitted)). Finally, the Court finds no factors that militate against the award of pre-judgment interest. Accordingly, the Court finds these factors weigh in favor of awarding pre-judgment interest.

As for the applicable interest rate, "the rate to be charged is a matter of district court discretion." *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986). When determining pre-judgment interest rates in cases involving damages arising from unpaid Form I-864 obligations, courts have permitted interest at the rate required for post-judgment interest under 28 U.S.C. § 1961. *See, e.g.*, *Dorsaneo v. Dorsaneo*, Civ. No. 17-765, 2018 WL 1981394, at *1 (N.D. Cal. Feb. 24, 2018); *Belevich*, 2019 WL 2550023, at *9; *Burkhalter v. Burkhalter*, Civ, No. 19-272, 2022 WL 6705777, at *2 (C.D. Cal. Aug. 2, 2022), *rev'd on other grounds*, 2023 WL 7490053 (9th Cir. Nov. 13, 2023). More broadly, courts in this circuit have applied 28 U.S.C. § 1961 to calculate pre-judgment interest for cases involving federal causes of action. *See, e.g.*, *Catalyst Emps.' Ass'n v. Air Prods., Chems.*, Civ. No. 00-2161, 2000 WL 1093614 (D.N.J. Aug. 4,

2000) (awarding pre-judgment interest under 28 U.S.C. § 1961 in a Labor-Management Relations Act case); *see also Black v. Binding Specialties, Inc.*, Civ. No. 09-3670, 2012 WL 602766, at *1 n.4 (D.N.J. Feb. 23, 2012) ("In federal question cases, 'the court may be guided by the rate set out in 28 U.S.C. § 1961' to determine the prejudgment interest rate." (quoting *Sun Ship, Inc.*, 785 F.2d at 63)). This rate is further appropriate to use because it represents the rate for "a virtually risk-free investment . . . permit[ting] the Court to avoid the speculation involved with determining whether possibly higher-yielding, but riskier, investments would have been successful." *Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp. 2d 128, 136-37 (D.N.J. 2007).

The post-judgment interest statute provides that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a)-(b). Accordingly, the Court calculates pre-judgment interest for each year Plaintiff is owed damages, as outlined below:

| **Year** | **Damages** | **Average Rate**[14] | **Pre-Judgment Interest** |
|---|---|---|---|
| 2022 | $3,686.50 | 2.80 | $103.22 |
| 2023 | $10,156.00 | 5.08 | $515.92 |
| 2024 | $8,156.00 | 4.69 | $382.52 |
| 2025 | $8,390.50 | 3.91 | $328.07 |

As such, the Court awards Plaintiff $1,329.73 in pre-judgment interest.

14 *See* Market Yield on U.S. Treasury Securities at 1-Year Constant Maturity, Federal Reserve Bank of St. Louis, https://alfred.stlouisfed.org/graph/?id=RIFLGFCY01NA (last accessed Aug. 31, 2026).

As for post-judgment interest, the Court "need not analyze the propriety of post-judgment interest, as federal district courts are *required* to award post-judgment interest under 28 U.S.C. § 1961." *Rizzo v. First Reliance Standard Life Ins. Co.*, Civ. No. 17-745, 2020 WL 13819831, at *1 (D.N.J. Jan. 13, 2020) (citation modified). Indeed, "28 U.S.C. § 1961 provides that '[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court.'" *Humanwell PuraCap Pharms. (Wuhan) Co. v. Apicore US LLC*, Civ. No. 24-8938, 2025 WL 2374413, at *3 (D.N.J. Aug. 15, 2025). Post-judgment interest begins to accrue the day a money judgment is entered. *Id.*; *see also Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 174-75 (3d Cir. 2010) (discussing *Eaves v. County of Cape May*, 239 F.3d 527 (3d Cir. 2001), and holding that "post-judgment interest on a particular award only starts running when a judgment quantifying that award has been entered"). A "money judgment" includes "'(1) an identification of the parties for and against whom judgment is being entered; and (2) a definite and certain designation of the amount which plaintiff is owed by defendant.'" *Travelers Cas. & Sur. Co.*, 609 F.3d at 175 (quoting *Eaves*, 239 F.3d at 533).

Plaintiff also seeks attorney fees, (ECF No. 80-1 at 20-21), which Defendant does not address in his opposition, (*see* ECF No. 82). 8 U.S.C. § 1183a(c) permits "payment of legal fees and other costs of collection." Indeed, the Form I-864 signed by Defendant states that if a "court enters a judgment against [the sponsor], . . . [the sponsor] may also be required to pay the costs of collection, including attorney fees." (*See* ECF No. 1-1 at 7.) Courts have accordingly awarded attorney fees in Form I-864 enforcement matters. *See, e.g.*, *Younis v. Farooqi*, Civ. No. 07-1393, 2009 WL 1375421 (D. Md. May 13, 2009); *Sloan v. Uwimana*, Civ. No. 11-502, 2012 WL 1155206 (E.D. Va. Apr. 4, 2012); *Flores v. Flores*, Civ. No. 21-5814, 2022 WL 3586871 (W.D. Wash. Aug. 22, 2022). Plaintiff's former counsel previously filed a Motion for Attorney Fees, (*see* ECF No.

31), which was terminated pending the outcome of this case, subject to renewal "should Plaintiff prevail," (ECF No. 66). Accordingly, the Court will deny Plaintiff's instant request for attorney fees and costs without prejudice and permit Plaintiff's former counsel to file a renewed motion with supporting affidavits.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Plaintiff's Motion for Summary Judgment (ECF No. 80) is **GRANTED** and Defendant's Motion for Summary Judgment (ECF No. 81) is **DENIED**. An appropriate Order follows.

Dated: September 4, 2026

Georgette Castner

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE